Good morning. May it please the Court. My name is Gia Kim, appearing on behalf of Appellants Ray Aguilar-Rodriguez and Ernesto Pulido. Philip Bronson is present at Council Table, appearing on behalf of Appellant Gustavo Cruz-Gramajo. I will be addressing the common legal issue in these appeals, and Mr. Bronson will respond to any questions that are specific to the case of Mr. Cruz-Gramajo. The briefs in these appeals are full of lengthy discussions of the amendments to the relevant conduct guidelines back in the late 80s, and out-of-circuit case law and relevant conduct in all sorts of contexts. But these cases actually boil down to a very simple question. Does the word during mean just during, or while, or contemporaneous with, or does it mean both during and in relation to? Resolving this question of plain meaning first, as the Supreme Court and this Court have instructed sentencing courts to do when interpreting the guidelines, dispenses with the need to speculate as to sentencing commission intent, especially in this situation where it's not clear that the sentencing commission had a clear intent with respect to Section 1326 offenses and criminal history points. The plain meaning of the criminal history guideline and the relevant conduct guideline, which is cross-referenced, shows that convictions incurred between a 1326 defendant's entry date and found-in date should not be counted as prior sentences. The key phrase that we're analyzing here comes from the relevant conduct guideline. Prior sentence is defined negatively, basically, as anything that's not relevant conduct. And the relevant conduct guideline says, all acts committed by the defendant that occurred during the commission of the offense of conviction in preparation for that offense or in the course of attempting to avoid detection or responsibility for that offense. And canons of statutory construction tell us that unless a term is otherwise defined, we should take the ordinary contemporary common meaning. So in this case, even the government doesn't dispute that the ordinary meaning of during is while or contemporaneous with. And that's not evident only from the dictionary or purely from common usage, but from the Supreme Court's recent decision in United States v. Rassam. Well, has the government taken the position that during, the words that you're talking about, are ambiguous? They essentially take that position, as you would have to do to look at the legislative history of the amendments and so forth. I'm not certain that in these briefs, they actually use the word ambiguous to describe during. Part of the government. I'm sorry. I was going to say, the biggest problem, one of the biggest problems I have with your particular argument is U.S. v. Marler. Yes. Because that's one of our court's cases. And we can't undo our court's cases. And in the U.S. v. Marler, Marler was serving time for a state robbery. He escaped, participated in a conspiracy to rob a casino. The cops found him. They arrested him. They found pictures of him holding handguns. Marler pled guilty to escape to conspiracy. The district court gave him criminal history points for conspiracy and rejected the objection that it related to the felon in possession charge because he had a gun during the conspiracy. And we affirmed. That's true, Your Honor. In that part of Marler, which was the second holding in Marler, it did address the same provision of the criminal history guidelines we're talking about here. However, if you look at the court's opinion and what was argued, the defendant in Marler did not make the same or, first of all, did not raise the same argument. He argued. Well, I thought it was quite the same argument. They were arguing about the objection that had been made and about whether there was criminal history points to be given or not. Correct. In Marler, the defendant apparently assumed that it had to be during and related to, and his argument proceeded on both of those counts. Also, when the district court resolved the objection and when this court reviewed it, it was very unclear as to when those offenses actually occurred. Marler pled guilty to the Federal felon in possession running from, the opinion says, November 2004 to January 2005. He escaped. Then we learned that the robberies conspiracy happened several days after his escape, so sometimes in January of that month. The very fact that the opinion does not exactly specify when those offenses occurred shows that it wasn't considered. You think that's a dicta? I think that's a dicta. Do you think I can just read Marler and read what was said there? I mean, the head notes don't make a dicta. The head notes do not make a dicta. And so what you're suggesting is that I'm supposed to read Marler, look at what they did, and say that the court was just giving dicta in this situation because it's no question. They affirmed. They said the gun in the events, the possession of the gun in the events is unrelated to the conspiracy, and therefore criminal history is applicable. That's true. That's what they said. They said unrelated. Yeah. They assumed the question that this appeal raises squarely. The reason it is dicta in Marler is because Marler turned basically on an evidentiary or a factual failure to show both the contemporaneity of the offenses and the relatedness. Okay. And then besides going against Marler, which now I'm supposed to see if that's dicta, I've got the Second Circuit, the Fifth Circuit, the Seventh Circuit, and the Tenth Circuit all saying that your argument is out to lunch. Not lunch, breakfast this morning. Out to breakfast. I mean, every one of those circuits have concentrated in on this and have suggested that it is not inappropriate. So you want the Ninth to go off on its own? I think of all the circuits you just referenced, only the Fifth Circuit's decision in Vargas-Garcia actually discussed the same issue as we're talking about here. Are you telling me that Kim, the comments they made in Kim, is again dicta? It is dicta for a couple reasons. Kim was a 1990 Second Circuit case. Yes, he is. It's actually a case about upward departures. And it's in a note. It's in a footnote. That case is about upward departures under 5K2.0. At that point in time, back in the infancy of the Guidelines, that Guideline had a reference about harm as defined in relevant conduct. That cross-reference no longer exists. It was taken out several years later because it was basically confusing. Also, it is in a footnote that the Second Circuit put there about relevant conduct, but that is an upward departures case. And the Seventh Circuit in Ritzima? In Ritzima, again, that is not relevant to this case for a couple reasons. One important part of Marler was its holding on escape and when escape occurs. Ritzima was an escape case also. And in Marler, this Court clarified that even though escape is continuing in some respects, we think of it as a continuing status type crime, it's actually complete in this case when Marler failed to report to his halfway house. So it might be continuing for statutes of limitations or whatever, but it is completed. We have a lot of, in the Circuit, 1326 precedent that specifically holds that 1326, the founded offense in 1326, and there are different offenses, is not complete until the alien is found. Now, as I understand it, and I'm going to skip to your second issue, whether Dee was under a criminal justice sentence when he committed the instant offense, that's not applicable to Palito, right? No, that is not. The separate issue in Palito that the government has raised is whether on remand Mr. Palito would receive perhaps a higher sentence because the intervening conviction in Mr. Palito's case was an evading conviction. The government argues that possibly on remand that could be counted as relevant and his sentencing guideline might be higher. And I also want to ask you another. It's my understanding that you have not made, or trial counsel did not make, nor have you made that Mr. Palito was evading the police when he, because he was an illegal alien. Trial counsel did make that argument. The district court rejected that both legally and factually. So there was a factual finding that he was not evading. He did not raise that on appeal. The government also says that our interpretation of the relevant conduct guideline would take the relevant out of the relevant conduct guideline. And I think that fear is unwarranted for several reasons. First of all, the relevant conduct guideline is incredibly complicated. It's 10 pages long. It has 10 application notes. One of the application notes has examples for defendants A through W. It would be in effect jettisoning all that text and commentary to say, well, we can just consider whether it's relevant. Relevant itself needs further definition, and the guidelines are generally quite specific as to what that connection must be. Sometimes it says in relation to, sometimes it says in connection with, sometimes it says the stronger in furtherance of. So even if we were to read some sort of relational requirement into the word during, we don't know what content that relational requirement would have. Second, the government raises some policy questions and says this interpretation is contrary to the policy of the criminal history guidelines with respect to criminal history points. And I think in a sense that's begging the question. We can't really know what the Sentencing Commission's policy was with respect to these long status type-based offenses unless we know what they meant by during in the first place. And the problem here comes up, generally it's quite easy to tell whether something is offense conduct or an offender characteristic. Offense conduct runs down the vertical axis of the guidelines. It's offense level. Offender characteristics runs across the horizontal axis. It's criminal history and primarily measures recidivism. And the whole point of the criminal history guidelines is that an offender with a prior record of criminal convictions is more culpable than a first-time offender, precisely because he hasn't been deterred by whatever sanctions he received. Here, to take Mr. Aguilar-Rodriguez, for example, he committed two DUIs between reentry and being found. This court has said in the case of Ayala that the Actus Reis of 1326 is the illegal reentry. He had not committed and been sanctioned for those DUIs before actually entering the country. Therefore, in our view, the policy actually supports not counting these convictions under criminal history. Well, I don't see any, I haven't seen any discussion, maybe I missed it, on the rule of lenity, where you have some ambiguity. And it can be interpreted to, say, favor the government. It could be interpreted to favor the defendant. Then, under the rule of lenity, which is cited hundreds of times, we're required to adopt the interpretation that would be more lenient toward the defendant. Have you argued that? It was argued briefly in the brief in Mr. Aguilar-Rodriguez's case. Yeah. The complication here with using the rule of lenity, which we agree would, if during were found to be ambiguous, which we argue it is not, that the defendant could get the benefit of the doubt, is that there is a cross-reference to the relevant conduct guideline for future defendants. Again, I think that argument is overstated for this reason. The phrase we're talking about is during the commission of. And this appeal basically just involves what during means. There's also a second question, which isn't in dispute under these facts. What does commission mean? Just because we have so much precedent in this circuit on when a 1326 is committed. For some of these other offenses that the government's raising, such as mail fraud, possession-type offenses, before Marler, we might have thought of escape as a similar offense. The Court still has to decide when that crime is committed for criminal history purposes. And as the escape part of Marler shows, it's not always intuitive. We would think it's committed during the whole time he's on escape. But in that case, this Court limited to the time between commencement and completion, which was a much, much briefer period of time. So as a legal matter, it's not clear when a crime is being committed. And this is also the same argument. This is what this Court confided in the case of U.S. v. Johnson, which we cite in the briefs. In that case, the instant conviction was felon in possession. And the question was whether an act that occurred while the defendant had constructive possession of the firearm, he had restrained his wife in a vehicle, whether that was relevant conduct and could qualify for the restraint or victim enhancement. And again, in that case, the Court apparently assumed that all that was required to meet during was, oh, contemporaneous, that the two offenses were contemporaneous. And the way the Court phrased it is, did he restrain her while he was possessing the firearm? There was no discussion of relational requirement. So, you know, there are cases, older cases of this Court where this Court has held that mail and wire fraud aren't continuing offenses. The case Scarano from 1992 holds that. Whether that would carry over into the criminal history category is something that future courts would have to consider. But we can't assume that. Illegal reentry is considered to be a continuing offense. Yes, it is, Your Honor. And in every context, venue, statute of limitations, ex post facto, in criminal history, it has been found to be a continuing offense. And this is why we argue that the Fifth Circuit's holding in Vargas Garcia, which is the closest analogous analog to this case, is not persuasive because they recognize that 1326 was a continuing offense, but they said they would adopt a flexible approach to implement what they saw the sentencing commission's intent was. We would argue that in this Court there's much more precedent that can't be overruled. I've always considered the guidelines to be an abomination. They're more complicated, probably, than immigration law. Or the Internal Revenue Code, in many ways. And they show a disdain for the sentencing judge's exercise of discretion and place the power of sentencing in U.S. attorneys who are probably still wet behind the ears. And our Supreme Court has said that these guidelines are unconstitutional, which was a great relief. But now we have to go through this dance of determining what the guideline sentence is. The sentence is, and we say it's only advisory. And if you look here, in each instance, as I recall, the district judge gave what appeared to be the lowest possible sentence under the guidelines, which I think is an indication that they're not really exercising their discretion because these guidelines have been in there for, since about, I think, almost 26, 27 years. So you don't have too many district judges around that really knew what it felt like to be a district judge when you've got full discretion in sentencing.  Oh, yes, so there's restraint. So here we are, we're spending all this time on all these little picky things, and we've got a situation here that's got to be fraught with ambiguity. Sometimes it's hard to wrap your mind around it. We have these due process requirements of fair notice, and you have to have an idea what the punishment is and all that. How in the world is anyone going to know, though that's a fiction, that if they know what the punishment is, they're less likely to commit the crime. Let's hear from the other side. I notice my time is actually increasing. Your 10 minutes over. That's all right. We're good at giving time. We've gone over all this stuff. Tell me why the rule of lenity shouldn't apply. Well, there's two reasons in this circumstance, one of which is that the one defense counsel identified, which is it's unclear whether this rule benefits or harms defendants overall, even though it benefits the defendant in this case. As defense counsel indicated, what this case involves is interpreting the relevant conduct provision and interpreting the relevant conduct provision, that's in part. It's both the criminal history and the relevant conduct, but if this court adopts the relevant conduct definition the defendant asks, that means temporal is going to be the requirement to determine things that are offense conduct and for other defendants, things that they do during the commission of the offense which are unrelated are now offense conduct and those sentences will be increased. If you take the Wilson case, for example, which is the 10th Circuit case, there the defendant argued that a firearm conviction. So the whole thing, the whole thing is crazy. Our perspective, the whole thing isn't crazy if you adopt the rule that we indicated, which is the purpose of this rule, the relevant conduct provision is to embrace real offense conduct. And if you interpret it the way we ask, it's consistent with that purpose. I mean, that's the whole problem here. If you adopt defendant's view and say it's temporal only, you get absurd results. You get things such as in Wilson where you have a firearm that's unrelated to offense conduct, or at least there's no evidence of it, and the district court said it was criminal history and gave it one criminal history point. And you have, under defendant's interpretation, it's relevant conduct. Now it's a plus-two offense enhancement. And if it's a minor fraud, I mean, in Wilson it wasn't necessarily a minor fraud, but let's say you had a minor fraud in which you had a base offense level of 6 or 7, so the defendant is looking at a guideline range of 0 to 6. A firearm enhancement has a minimum base offense level of 14. And now the defendant is looking at 10 to 16 months in prison for unrelated criminal conduct. It has nothing to do with the offense conduct because now a firearm is considered, that's unrelated to a fraud, is considered offense conduct rather than criminal history where it belongs. So I think the position the defendant is asking for has the potential to substantially increase sentences, which is why we indicated the rule of lenity wouldn't apply here. I mean, there's a second reason, too, which is the rule of lenity only applies when there's grievous ambiguity and after using every statutory tool. Well, I don't think it's grievous ambiguity. Where are you getting that from? Well, I think this Court said that in Iverson, actually. It said it's only once you apply the statutory construction tools. And after that, after you've done all that, if you're just making a guess as to what Congress or, in this case, the Senate commission intended, that's when you apply the rule. As we indicated in our brief, if you go through all these tools, they indicate that this is not what the commission intended, was to make it temporal only. Aside from that, I mean, I think the more important thing is what Judge Schnitt asked, which is this Court is going to Everything that's in there is unconstitutional, but we've still got to kind of do a dance with it. Well, I mean, the courts have discretion after Booker, although I would note in two of these cases, this is a binding plea agreement, which the parties specifically agreed to the sentence before the courts. So the only thing that was at issue was criminal history. I mean, that's why we're having this criminal history discussion. But, I mean, I do think one of the important things, as Judge Smith indicated, is this Court's already decided this issue in Marler. I mean, apart from the rule of lenity, I mean, this has already been resolved. It was the same issue there. The only difference is there were two issues that were argued there. The defendant, unlike in this case, argued it was both related to the offense and it was temporal, whereas here there's only a temporal argument. And I will point out it was conceded there that the firearm conviction, the federal felon in possession of a firearm conviction, happened during the robbery offense conduct, the robbery conviction, because the defendant said that was so. In fact, he said he was intending to use the firearm during the robbery and possessed him at the same time. But what the Court said was there's no evidence of that. There's no evidence that he, in fact, intended to use the firearm during the robbery. And, in fact, he possessed it at different times. He possessed it before in events unrelated to the robbery. But there was no dispute in that case that the firearm and the robbery offense conduct took place at the same time. And the defendant's argument, that would be that it was relevant conduct and not criminal history. And what this Court did was look at that. It said it analyzed whether it was related to it. It said it wasn't. And then it said it wouldn't be consistent with the purpose of criminal history to have unrelated conduct to be offense conduct rather than criminal history. That was the whole point of what the Court said there. And it referred back to this discussion on the first issue. I mean, there were two issues in Marla. The first was whether escape. The defendant had really three convictions. Let me back up. He had the felon in possession of a firearm, which was the incident offense, and an escape and robbery conviction, which were both part of his criminal history. All three happened at the same time. His first issue was that the escape and the robbery were on the same occasion, and therefore related cases. And this Court said, well, escape actually ends once you escape, even though it's a continuing offense for other purposes. But as a secondary and corollary point to that, what this Court said was, even if you're going to deem it a continuing offense, it would defeat the purpose of criminal history to allow the extended nature of that offense, escape, to not allow the appropriate consequences for the severable and distinct criminal conviction. And, in fact, this Court there applied Vargas-Garcia and quoted it. So when this Court dealt with the second issue, which was the precise issue here, it referred back to that same policy analysis. So this Court was adopting the Vargas-Garcia rationale and saying, this is separate and distinct criminal conduct and should be treated separately and distinctly. So I think Marler 100 percent dealt with this issue and controls this case apart from anything else that we have here. I think taking a step back from Marler, even if that case hadn't existed, the result would still be the same. Why don't you take two sips of water and slow down a little bit. Oh, I apologize if I'm talking too fast. No, that's all right. I mean, it just clears everything up for me. Go ahead. I think if you look just at the language, when we're talking about turning back to the relevant conduct revision 1B1.3, the defendant says, well, this is only about what during means and during means temporal. But that's not what statutory construction means. You don't look at a particular word. You have to look at it in the context of the statute. As this Court indicated in TRW Rifle, words rarely have meaning when divorced from their context. And the defense counsel says that, well, during might be clear, but commission of the offense is unclear and it may be discrete acts or it may not be discrete acts. But that presents part of the problems, as you're interpreting the whole phrase and the context of the whole provision and the whole sentencing guideline. During the commission of the offense could be discrete acts in which all the offense conduct would be related to that offense and there was no need to put in a relationship requirement. It was assumed that that would take place. Or you could assume that, as defense counsel does, that they intended temporal only. But if you look at the other provisions of 1B1.3, you don't see a temporal only requirement. It's not just during the commission of. It's in preparation for or avoiding detection responsibility for. Those two, while they have a temporal, also have a relationship requirement. It's not just time. It's not just before and after. It's before related and after related. There's reason to believe that it would be during related as well. When you look at other provisions of 1B1.3, if you take, for example, the conspiracy liability, co-conspiracy liability, again, something that has the potential for long-term conduct, and what you don't see for that is that it's temporal only. What you see is it's in temporal and in furtherance of the conspiracy. If you look at 1B1.2, excuse me, 1B1.3A2, which deals with same course of conduct or common scheme, that specifically refers to 3D1.2D, which is the grouping provision. And that specific grouping provision, one of the things it deals with is continuing or ongoing offenses or things like drugs when you have a series of transactions over time. That specific provision was specifically designed to address continuing offenses. It had a limit as to the relationship. And even the background commentary to the guidelines says, look, that provision B2 is different than A1 because it addresses the discrete problems addressed by a series of continuing offenses and continuing offenses. When you look at that, when you have everything in the relevant conduct provision that looks like it's a long, potentially long-term and presents this problem of continuing offenses that we have here. We got your argument well in hand. And, you know, in your words per minute or per second, you've exceeded 30 minutes of time. I don't know. I mean, you did a great job. I admire you. Well, thank you very much. And the panel has no further questions. And I'll put that in writing if you want. Well, counsel, I think you found, I mean, we've heard the arguments, I think what Judge Preggerson is saying, is the arguments are really well made in both briefs about your different interpretation of what that thing ought to do. And I don't think he's trying to criticize you at all. No, no, I'm not criticizing you. I'm praising you. I appreciate that, Your Honor. And I appreciate your remarks as we do, counsel. My only problem is, Honorable Preggerson, what are you going to do with co-counsel over there that didn't even get a shot? Well, I'm going to give him a shot right now. Your Honor, unless the Court has a question, I would submit it here. Don't you want to go up there so we can even put a note that you've appeared? No, no. No, I'm just kidding. Well, the note is appears. I know. You just join the. . . You join counsel's argument? Is that what you're saying? Yes, I'm joining the co-defendant's argument. Philip Bronson for Mr. Krugman, Grimaccio. You would agree that this last issue, whether the defendant was under a criminal justice sentence when he committed the instant offense, as to your client, any error is harmless because it doesn't increase the guideline range at all. Well, the argument was that the. . . Well, the argument is whether the defendant was under a criminal justice sentence when he committed the instant offense. And your argument was that there shouldn't be. But as to your particular client, Mr. Cruz, any error would be harmless because it doesn't matter one way or another, it doesn't increase the guideline range. No, it doesn't. But I was arguing then remand would be. . . It's true that remand would be nonproductive or. . . It would be worthwhile, even if we get. . . Okay, thank you. Okay. Thanks very much. Fascinating issues. Now we'll go on here to U.S. v. Ignacio Medina-Nunez. Young lady, Kim. Ms. Kim, good argument. Great argument. Thank you for your argument. Government, good argument. All right. See you all.
judges: Pregerson, Hall, Smith